(No. 90151.—)

In re DETENTION OF HERBERT VARNER (The People of the State of Illinois, Appellee, v. Herbert Varner, Appellant).

*Opinion filed October 2, 2003.—Rehearing denied November 24, 2003.*

G. Joseph Weller, Deputy Defender, and Kathleen J. Hamill, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Lisa Anne Hoffman, Assistant Attorney General, of Chicago, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

After a trial proceeding in the circuit court of Lake County, a jury found Herbert Varner to be a sexually violent person under the Sexually Violent Persons Commitment Act (the Act) (725 ILCS 207/1 *et seq.* (West 1998)). As a result, Varner was committed to the custody of the Department of Human Services for control, custody and treatment. The appellate court affirmed, rejecting Varner's claims that the Act is unconstitutional and that he should not have been committed to institutional care. *In re Detention of Varner*, 315 Ill. App. 3d 626 (2000). We granted Varner's petition for leave to appeal (177 Ill. 2d R. 315) and affirmed, holding that the Act did not violate substantive due process because it is not limited to persons who lack volitional control over their behavior. *In re Detention of Varner*, 198 Ill. 2d 78 (2001).

The United States Supreme Court subsequently granted Varner's petition for writ of *certiorari*, vacated the judgment of this court, and remanded the cause for our further consideration in light of *Kansas v. Crane*, 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002). *Varner v. Illinois*, 537 U.S. 802, 154 L. Ed. 2d 3, 123 S. Ct. 69 (2002). Upon reconsideration, assisted by supplemental briefing and oral argument, we again affirm the judgment of the appellate court.

## BACKGROUND

The events which led to Varner's commitment are detailed both in the original opinion of this court (*Varner*, 198 Ill. 2d 78) and in the opinion of the appellate court (*Varner*, 315 Ill. App. 3d 626). We will repeat here only those facts germane to our analysis.

In 1988, the State charged Varner with the criminal sexual assault of his five-year-old niece. 720 ILCS 5/12—13 (West 1998). He pled guilty to the charge and was sentenced to a term of imprisonment of 13 years in the Illinois Department of Corrections.

The State initiated the proceedings at issue here as Varner's prison term was ending and he was scheduled for entry into mandatory supervised release. The State sought to have Varner committed indefinitely to the Department of Human Services (Department) pursuant to the Sexually Violent Persons Commitment Act. The circuit court, pursuant to the Act, determined after a hearing that probable cause existed and ordered Varner transferred to a Department facility for evaluation. See 725 ILCS 207/30 (West 1998).

The question of whether Varner was a sexually violent person was subsequently tried before a jury. The jury heard evidence that Varner may have been sexually abused as a child by his father and that Varner had previously committed other sexual offenses involving children, including his daughter and another niece. At the time he committed the offense for which he was then incarcerated, he was only 28 years old. The jury also heard evidence from two clinical psychologists that Varner was a pedophile who suffered from a personality disorder, the combination of which created a substantial probability that he will engage in further acts of sexual violence in the future. A third clinical psychologist testified on Varner's behalf, stating that the evidence was inconclusive as to whether Varner was a pedophile. This psychologist noted that the risk that Varner would reoffend was moderate but could be reduced to minimal. He further proposed that Varner's exposure to children be limited and controlled and that he be treated with Depo Provera, a chemical that lowers testosterone levels and thereby reduces an individual's sex drive.

As we noted in our initial opinion in this case:

"The jury was instructed that it was to determine whether the State had proved beyond a reasonable doubt that Varner was a sexually violent person. The court's definition of a sexually violent person tracked the language used in section 5(f) of the Act (725 ILCS 207/5(f) (West 1998)). Specifi-

cally, the jury was told that '[a] sexually violent person means a person who has been convicted of a sexually violent offense and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.' The jury was further instructed that criminal sexual assault constitutes a 'sexually violent offense,' and it was given the definition of '[m]ental disorder' set forth in section 5(b) of the Act, namely, 'a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence' (725 ILCS 207/5(b) (West 1998))." *Varner*, 198 Ill. 2d at 81-82.

The jury found that Varner was a sexually dangerous person. The circuit court then entered an order committing Varner to the custody of the Department for institutional care and treatment in a secure facility. See 725 ILCS 207/40(a), (b)(2) (West 1998).

In his appeal, Varner challenged the constitutionality of the Act on the grounds that it, *inter alia*, denies equal protection, violates the prohibitions against double jeopardy and *ex post facto* laws, deprives him of the right to waive a jury trial, and contravenes procedural and substantive due process guarantees. Following the appellate court's rejection of each of Varner's claims, Varner sought leave to appeal in this court, arguing only that the Act violated substantive due process. We granted leave on that basis.

## ANALYSIS

Before we begin our reconsideration of this matter, we believe it helpful to recount some of the analytical points we made in our previous opinion. We noted there that Varner contended that his commitment under the Act violates the principles of substantive due process because it occurred without a specific finding by the jury that he lacked volitional control over his sexually violent criminal behavior. We further noted that Varner's claim,

*i.e.*, that commitment is constitutionally permissible only where the defendant lacks volitional control over his sexually violent conduct, was based on the United States Supreme Court's decision in *Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997). See *Varner*, 198 Ill. 2d at 83-85 (discussing *Hendricks*). We observed, however, that the Illinois law challenged by Varner is similar to the Kansas statute upheld by the United States Supreme Court in *Hendricks*. We noted that

> "the jury here received instructions that tracked the language of the Act. Under those instructions, the jury's conclusion that Varner was a sexually violent person necessarily required a determination that he suffered from a mental disorder. For the reasons set forth in *Hendricks*, the precommitment requirement of a mental disorder, as defined by the Act, was sufficient to 'narrow[ ] the class of persons eligible for confinement to those who are unable to control their dangerousness.' *Hendricks*, 521 U.S. at 358, 138 L. Ed. 2d at 513, 117 S. Ct. at 2080. Accordingly, there was no need for the jury to make any additional findings in this case regarding Varner's ability to control his sexually violent conduct." *Varner*, 198 Ill. 2d at 84-85.

Nevertheless, at the time we announced our original decision in this matter, there was support for Varner's position in *In re Care & Treatment of Crane*, 269 Kan. 578, 7 P.3d 285 (2000). At that time, however, the case was pending in the United States Supreme Court, which had granted a writ of *certiorari* in the matter. See *Kansas v. Crane*, 532 U.S. 957, 149 L. Ed. 2d 372, 121 S. Ct. 1483 (2001) (order granting *certiorari*). In his reply brief in the original appeal, Varner observed that the United States Supreme Court had granted *certiorari* in the Kansas decision. He contended: "Because the issue presented in *Crane* is identical to the issue presented in this case, the Supreme Court's decision in *Crane* will be relevant to, and probably ultimately dispositive of, the question now before this Court." We agree. In our

original opinion, we found the Kansas decision unpersuasive, and the United States Supreme Court subsequently rejected the Kansas court's analysis. *Kansas v. Crane*, 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002).

We discussed the Kansas Supreme Court's analysis in *Crane* at length in our original opinion because Varner cited it as support for his contentions. We noted that the statute at issue in that case was the same statute which the Kansas Supreme Court had struck down, but which the United States Supreme Court subsequently upheld in *Hendricks*. *Varner*, 198 Ill. 2d at 85. We observed that

"[t]he problem with the provision, in the Kansas Supreme Court's view, is that it refers to emotional capacity as well as volitional capacity. The court reasoned that volitional capacity refers to the ability to exercise free choice or will and that a condition affecting the capacity to exercise free choice or will would, in this context, mean a condition that renders a person unable to control his or her behavior. By including emotional capacity, the court believed, the legislature must have intended to address some alternative circumstance in which the exercise of free will or choice is not at issue and the individual acts for reasons other than an inability to control his behavior. To the extent that such an individual might be subject to commitment under the statute, the court believed that the law was inconsistent with *Hendricks'* requirement that civil commitment statutes such as this be limited in their application to persons who cannot control their dangerous behavior." *Varner*, 198 Ill. 2d at 85-86.

Notwithstanding the parallels between the Kansas statute and our own Act, we did not find the reasoning of our colleagues on the Kansas court to be persuasive. Unlike the Kansas Supreme Court, we

"[did] not believe that the legislature used the terms 'emotional capacity' and 'volitional capacity' as a way to differentiate between individuals who are capable of controlling their sexually violent behavior and those who are not. The inability to control sexually violent behavior is a *sine qua non* under the statute. The terms 'emotional'

and 'volitional' are merely adjectives used to describe the reasons an individual might lack the capacity to control his behavior. Medical science's understanding of mental pathology is imperfect and evolving, and the legislature used these terms simply to insure that everyone who is unable to control his or her sexually violent behavior is covered by the law, whatever the precise reason for that lack of control might be." *Varner*, 198 Ill. 2d at 86.

In addition, we noted that the Kansas Supreme Court gave a second reason for invalidating that state's statute. We pointed out that the Kansas court believed that the Kansas provision

"applies, by its terms, not only to persons suffering from 'mental abnormalities,' but also to persons suffering from 'personality disorders.' There is no definition of 'personality disorder' in the statute, and the court was concerned that where an individual suffers from a personality disorder rather than a mental abnormality, a jury could find him subject to civil commitment without first making a finding that he was unable to control his behavior." *Varner*, 198 Ill. 2d at 86.

After examining the Illinois provision, however, we found this problem not to exist and held as follows:

"In defining '[s]exually violent person,' our statute does not refer to persons suffering from personality disorders, only to persons suffering from 'mental disorders.' 725 ILCS 207/5(f) (West 1998). The term 'mental disorder' is, in turn, specifically defined by the Illinois Act, and, as discussed earlier in this opinion, the precommitment requirement of a mental disorder, as defined by the Act, is sufficient to pass constitutional muster under *Hendricks*." *Varner*, 198 Ill. 2d at 86-87.

In 2002, the United States Supreme Court announced it decision in *Crane*, rejecting the reasoning of the Kansas Supreme Court. In *Crane*, the Court held that the United States Constitution does not permit commitment of dangerous sexual offenders without any lack-of-control determination; however, the lack of control does not have to be a total or complete lack of control. *Crane*, 534 U.S.

at 411-13, 151 L. Ed. 2d at 861-63, 122 S. Ct. at 870; *People v. Masterson*, 207 Ill. 2d 305, 321-22 (2003) (discussing *Crane*). Now, on remand from the United States Supreme Court here, Varner contends *Crane* requires a specific lack-of-control finding. We disagree.

In our view, *Crane* did not hold that the Constitution requires a specific determination by the fact finder in every case that a person lacks volitional control, because *Crane* upheld the commitment in *Hendricks* as constitutional, even though there was no specific lack-of-control determination in *Hendricks*. *Crane*, 534 U.S. at 413-14, 151 L. Ed. 2d at 863, 122 S. Ct. at 871. As we recently observed in *Masterson*: "Clearly the justices of the *Crane* majority did not believe their decision called into question the continued viability of *Hendricks*. Nothing said in the majority opinion *explicitly* repudiates or alters principles espoused in *Hendricks*." (Emphasis in original.) *Masterson*, 207 Ill. 2d at 324. We acknowledge that *Masterson* involved the constitutionality of a commitment under the Sexually Dangerous Persons Act (SDPA) (725 ILCS 205/0.01 *et seq.* (West 1998)). Nevertheless, our decision included a thorough analysis of the Act at issue in this case, *i.e.*, the Sexually Violent Persons Commitment Act, to the end of conforming the SDPA to the Sexually Violent Persons Commitment Act. *Masterson*, 207 Ill. 2d at 318-30. For this reason, our analysis of the Act in *Masterson* provides substantial guidance in this case.

In *Masterson*, we noted that several state courts have held that their sexually violent offender statutes conformed to *Hendricks* and *Crane* where those statutes, like our Act, require proof of the commission of a prior offense, and include specific definitions of "mental abnormality" or "mental disorder," as well as a defined burden regarding the likelihood of future offenses. Those statutes, as with our Act, contain definitions that supply

the constitutionally required elements for civil commitment. A fact finder properly instructed with definitions of these and other pertinent statutory terms need not receive additional separate instruction on lack of control. *Masterson*, 207 Ill. 2d at 324-27 (and cases cited therein). Our appellate court has reached the same conclusion. See *In re Detention of Dean*, 337 Ill. App. 3d 610, 611-13 (2003); *People v. Swanson*, 335 Ill. App. 3d 117, 122-23 (2002); *In re Detention of Isbell*, 333 Ill. App. 3d 906, 911-13 (2002).

Earlier in this opinion, we detailed the manner is which Varner's jury was instructed. We believe that the jury was properly instructed with definitions of the statutory terms relevant to Varner's case so as to avoid any constitutional impediment. Thus, after considering the facts in this matter in light of both the United States Supreme Court's decision in *Crane* and our decision in *Masterson*, we reach the same conclusion as we did in our previous opinion, *i.e.*, that Varner's commitment does not run afoul of substantive due process.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court affirming the circuit court's order committing Varner to the custody of the Department of Human Services for institutional care and treatment in a secure facility is affirmed.

*Affirmed.*