THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALE L. TAYLOR, Defendant-Appellant.

Second District    No. 2—01—0494

Opinion filed June 14, 2005.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, and Lisa Madigan, Attorney General, of Chicago (Joel D. Bertocchi, William L. Browers, and Kristen L. Hopkins, Assistant Attorneys General, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Following a trial in the circuit court of Lake County, a jury found respondent, Dale Taylor, to be a sexually violent person pursuant to the provisions of the Sexually Violent Persons Commitment Act (the Act) (725 ILCS 207/1 *et seq.* (West 2000)). Respondent timely appealed to this court, contending (1) that the Act is unconstitutional under the United States Supreme Court's decision in *Kansas v. Crane*, 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002), and (2) that the trial court abused its discretion in permitting the State's experts to testify regarding certain actuarial instruments they utilized to predict the likelihood that respondent would reoffend. On December 30, 2002, this court filed an opinion reversing the trial court's judgment and remanding the case for a new trial. See *People v. Taylor*, 335 Ill. App. 3d 965 (2002). Although we rejected respondent's constitutional challenge, we held that the trial court had abused its discretion in allowing the State's experts to testify regarding the actuarial instruments they had utilized in forming their opinions as to whether respondent was likely to reoffend. *Taylor*, 335 Ill. App. 3d at 978-80. We found that the evidence concerned a scientific methodology subject to the admissibility requirements articulated in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and that the State had failed to meet its burden of establishing that the evidence satisfied these requirements. *Taylor*, 335 Ill. App. 3d at 977-80.

Respondent subsequently filed a petition for leave to appeal to our supreme court. On March 30, 2005, the supreme court entered an order denying respondent's petition for leave to appeal. See *People v. Taylor*, 214 Ill. 2d 548 (2005). In denying respondent's petition, the supreme court also entered the following order:

"In the exercise of this Court's supervisory authority, the Appellate Court, Second District, is directed to vacate its judgment in *People v. Taylor*, 335 Ill. App. 3d 965 (2002), and to reconsider in light of *People v. Simons*, 213 Ill. 2d 523 (2004)." *People v. Taylor*, 214 Ill. 2d 548 (2005) (supervisory order on denial of petition for leave to appeal).

Pursuant to this order, we hereby vacate our December 30, 2002, judgment entered in this appeal. See *Taylor*, 335 Ill. App. 3d 965. We have reconsidered the merits of respondent's appeal in light of *Simons*, and, for the reasons that follow, we now affirm the trial court's judgment.

In 1992 respondent pleaded guilty to the charge of aggravated criminal sexual assault, and the trial court sentenced him to 18 years' imprisonment. On September 28, 2000, five days before respondent's scheduled mandatory supervised release, the State filed a petition to commit respondent pursuant to section 40 of the Act (725 ILCS 207/40 (West 2000)). The petition alleged that respondent was suffering from the following mental disorders: (1) paraphilia, not otherwise specified, with nonconsenting females, (2) alcohol dependence, and (3) severe antisocial personality disorder. The State alleged that respondent was dangerous to others because his mental disorders created a substantial probability that he would engage in future acts of sexual violence. Accompanying the petition, the State provided a mental health evaluation of respondent prepared by psychologist Dr. Agnes Jonas.

Respondent moved *in limine* to bar any expert testimony regarding the results of certain actuarial instruments utilized to predict the likelihood that respondent would reoffend, including the Minnesota Sex Offender Screening Tool (MnSOST), the Minnesota Sex Offender Screening Tool-Revised (MnSOST-R), the Static-99, and the Rapid Risk Assessment of Sexual Offense (RRASOR). Respondent argued that the validity and reliability of these tests have not been established and that the tests have not been accepted by the scientific community. Respondent concluded that the tests failed to meet the standards for admissibility enunciated under *Frye*, 293 F. 1013.

The trial court subsequently conducted a *Frye* hearing. At the hearing, respondent called forensic psychiatrist Dr. Lynn Maskel. Dr. Maskel testified that the majority of her practice involved consultation on sexually violent persons cases. She reported that she had attended numerous conferences featuring the researchers who created the MnSOST, MnSOST-R, the Static-99, and the RRASOR. Dr. Maskel has had discussions with the authors of these actuarial instruments as well as with other practitioners who have utilized these instruments.

Dr. Maskel opined that the MnSOST, MnSOST-R, RRASOR, and Static-99 instruments had not been accepted by the psychological or psychiatric community, but were instead "young pioneering efforts of novel science." Dr. Maskel testified that, absent replication of these studies in more diverse populations, these studies could not be considered "settled science." Dr. Maskel stated that there was vigorous controversy about whether the MnSOST, MnSOST-R, RRASOR, and Static-99 should be used at all. However, she acknowledged that the methods used by psychologists and psychiatrists in the field vary greatly and that some evaluators utilize actuarial instruments.

The State called clinical psychologist Dr. Barry Leavitt to testify on its behalf at the hearing. Dr. Leavitt testified that he has an

exclusive contract with the State of Illinois to conduct evaluations of persons alleged to be sexually violent. Dr. Leavitt testified that the MnSOST-R, RRASOR, and Static-99 are routinely used by psychologists and psychiatrists in order to form an opinion as to a sexual offender's risk of recidivism. Dr. Leavitt opined that each of these instruments is a reliable tool in predicting the risk of sexual reoffense. Finally, Dr. Leavitt opined to a reasonable degree of psychological certainty that each of these instruments has been generally accepted by members of the psychological and psychiatric communities as a tool to predict risk of sexual offender recidivism.

Following argument by counsel, the trial court denied respondent's motion *in limine*. The trial court found that the MnSOST, MnSOST-R, RRASOR, and Static-99 were actuarial instruments that were not scientific tests subject to the *Frye* standard. The trial court further found that, assuming, *arguendo*, actuarial instruments were subject to a *Frye* analysis, these instruments have been accepted for use in the psychological and psychiatric communities and were commonly applied in sexually violent persons cases in many jurisdictions, including Illinois. The trial court further noted that many of the factors considered by these instruments to predict recidivism were also utilized by judges in determining whether a person is a danger to the community in other contexts such as sentencing and civil commitment proceedings.

At trial, the State called Drs. Leavitt and Jonas to testify. The witnesses testified that they applied the MnSOST-R, RRASOR, and Static-99 in assessing respondent's risk for reoffense. Both witnesses reported the results of these instruments, all of which indicated that respondent was likely to reoffend. Both witnesses also testified that respondent suffered from a mental disorder that affected his volitional capacity and that it was likely he would engage in future acts of sexual violence. Following deliberations, the jury found that respondent was a sexually violent person. The trial court subsequently found that respondent needed a highly structured, physically controlled setting for treatment and committed him to the Department of Human Services's facility for sexually violent persons in Joliet. This timely appeal followed.

Respondent first contends that the Act is unconstitutional because it violates his right to substantive due process. Relying on the United States Supreme Court decision in *Kansas v. Crane*, 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002), respondent argues that the Act violates due process because it contains no requirement that the State prove beyond a reasonable doubt that he has serious difficulty in controlling his sexually violent behavior.

Statutes are presumed constitutional; this court will uphold a statute's constitutionality whenever reasonably possible, and any doubts will be resolved in favor of the law's validity. *In re Detention of Allen*, 331 Ill. App. 3d 996, 1003 (2002), citing *People v. Jeffries*, 164 Ill. 2d 104, 111 (1995). The party challenging a statute bears the burden of clearly establishing its unconstitutionality. *Allen*, 331 Ill. App. 3d at 1003, citing *People v. DePalma*, 256 Ill. App. 3d 206, 210 (1994). Our review is *de novo*. *Allen*, 331 Ill. App. 3d at 1003.

In *Crane*, the Supreme Court held that, to commit a sexual offender, the State is obligated to show that the individual has serious difficulty in controlling his or her behavior. *Crane*, 534 U.S. at 412-13, 151 L. Ed. 2d at 862, 122 S. Ct. at 870. Although the *Crane* Court refrained from stating exactly what proof the State must present to demonstrate a lack of control, the Court noted that the State must "distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Crane*, 534 U.S. at 413, 151 L. Ed. 2d at 863, 122 S. Ct. at 870.

In *In re Detention of Varner*, 207 Ill. 2d 425, 432-33 (2003), our supreme court rejected the precise constitutional challenge raised by respondent in this case. In *Varner*, the supreme court examined the *Crane* decision and concluded that *Crane* did not require in every case a specific determination by the finder of fact that the respondent lacks volitional control. *Varner*, 207 Ill. 2d at 432. After examining the Act, the supreme court noted that the statute contains definitions that supply the constitutionally required elements for civil commitment, and that a finder of fact properly instructed with these definitions does not need to receive additional separate instructions on lack of control. *Varner*, 207 Ill. 2d at 432-33. The court noted that, under section 5(f) of the Act, to prove that an individual is "sexually violent," the State must show that the individual is dangerous because he or she suffers from a mental disorder that makes it substantially probable that he or she will engage in further acts of sexual violence. *Varner*, 207 Ill. 2d at 427-28, citing 725 ILCS 207/5(f) (West 1998). Additionally, section 5(b) of the Act defines "mental disorder" as a congenital or acquired condition affecting an individual's emotional or volitional capacity that predisposes the individual to engage in acts of sexual violence. *Varner*, 207 Ill. 2d at 428, citing 725 ILCS 207/5(b) (West 1998). Accordingly, the *Varner* court held that, where the finder of fact is properly instructed in accordance with the Act, the finder of fact need not make additional findings regarding a respondent's ability to control his or her conduct. See *Varner*, 207 Ill. 2d at 432-33; *People v. Swanson*, 335 Ill. App. 3d 117, 122-23 (2002).

■ In the present case, the record confirms that the jury was properly instructed in accordance with the provisions of the Act. Accordingly, there was no need for the jury to make an additional finding that respondent had serious difficulty in controlling his behavior when, by rendering its verdict, the jury had necessarily found that respondent had a "mental disorder" that affected his emotional or volitional capacity, predisposing him to engage in acts of sexual violence. See 725 ILCS 207/5(b) (West 1998). We therefore conclude that, in accordance with *Crane* and *Varner*, there was sufficient evidence and instruction for the jury to find beyond a reasonable doubt that respondent has serious difficulty in controlling his sexually violent behavior. For all of these reasons, we reject respondent's constitutional challenge.

■ Respondent's next contention on appeal is that the trial court abused its discretion in denying his motion *in limine* to bar the State from introducing expert testimony predicated upon results obtained from the MnSOST, MnSOST-R, RRASOR, and Static-99. Respondent argues that these instruments have not been generally accepted by the psychological and psychiatric communities and that the results obtained from these instruments are unreliable. Respondent concludes that the evidence was highly prejudicial and affected the outcome of his trial.

Our supreme court recently spoke to the admissibility of these instruments in *In re Commitment of Simons*, 213 Ill. 2d 523 (2004). In *Simons*, the supreme court adopted a new, dual standard of review with respect to the admission of expert scientific testimony. *Simons*, 213 Ill. 2d at 530. The court announced that the "decision as to whether an expert scientific witness is qualified to testify in a subject area, and whether the proffered testimony is relevant in a particular case, remains in the sound discretion of the trial court. The trial court's *Frye* analysis, however, is now subject to *de novo* review." *Simons*, 213 Ill. 2d at 530-31. The supreme court then declined to determine whether evidence based on actuarial risk assessment instruments, including the MnSOST-R and the Static-99, was scientific evidence subject to a *Frye* test for admissibility. Instead, after reviewing materials outside the trial record, the *Simons* court concluded that "whether or not actuarial risk assessment is subject to *Frye*, there is no question that it is generally accepted by professionals who assess sexually violent offenders and therefore is perfectly admissible in a court of law." *Simons*, 213 Ill. 2d at 535. Thus, the *Simons* court concluded that expert testimony predicated upon these actuarial instruments is properly admitted in cases seeking commitment under the provisions of the Act. *Simons*, 213 Ill. 2d at 543.

Here, Drs. Leavitt and Jonas relied upon the MnSOST-R,

RRASOR, and Static-99 to assess whether respondent was a sexually violent person. In light of our supreme court's decision in *Simons* that expert testimony predicated upon actuarial risk assessment instruments is admissible, we hold that the trial court in this case properly permitted Drs. Leavitt and Jonas to testify regarding their use of the MnSOST, MnSOST-R, RRASOR, and Static-99 instruments.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

McLAREN and CALLUM, JJ., concur.