THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL GILFORD, Defendant-Appellant.

First District (2nd Division)   No. 1—01—0695

Opinion filed September 27, 2005.

Todd S. Pugh and Gina T. Marotta, both of Thomas M. Breen & Associates, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HALL delivered the opinion of the court:
Following a jury trial, defendant Michael Gilford was convicted of

two counts of criminal sexual assault and two counts of criminal sexual abuse of T.A., and was subsequently sentenced to two consecutive 30-year terms of imprisonment. After the trial court denied his posttrial motions, defendant filed a timely notice of appeal.

On direct appeal, we reversed defendant's conviction and remanded the matter for retrial. *People v. Gilford*, No. 1—98—1346 (1999) (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)). We found that although the State's evidence was sufficient to find defendant guilty of criminal sexual assault and criminal sexual abuse beyond a reasonable doubt, certain trial court errors denied defendant a fair trial and needed to be cured upon remand.

The matter was remanded to the trial court, and approximately two months before defendant's criminal trial was to begin, the State filed a civil commitment petition to have him declared a sexually dangerous person pursuant to section 1.01 of the Illinois Sexually Dangerous Persons Act (Illinois SDPA) (725 ILCS 205/1.01 (West 1996)).[1] Pursuant to the State's petition, the trial court conducted a hearing to ascertain if defendant was a sexually dangerous person subject to civil commitment under the Illinois SDPA.

After considering the evidence, expert testimony, and closing arguments on the matter, the trial court determined that defendant was a sexually dangerous person, and the court remanded him to the custody of the Illinois Department of Corrections. Defendant timely appealed, contending that: (1) the Illinois SDPA was unconstitutional; (2) the trial court erred in finding the evidence sufficient to declare him a sexually dangerous person; and (3) the State improperly used the Illinois SDPA for retribution when, during the pendency of defendant's criminal proceeding, the State elected to seek his civil commitment as a sexually dangerous person under the SDPA, rather than proceed with the pending criminal prosecution.

On December 24, 2002, we filed an opinion vacating the trial court's judgment and remanding the matter with directions to the court to determine if defendant's diagnosed mental condition made it "seriously difficult" for him to control his criminal sexual behavior, thereby justifying civil commitment under the Illinois SDPA. *People v.*

---

[1]In order to establish that an offender is a sexually dangerous person, the State must prove beyond a reasonable doubt that the offender suffers from a mental disorder which existed for a period of not less than one year immediately prior to the filing of the petition, that the mental disorder is associated with criminal propensities to the commission of sex offenses, and that the offender has actually demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children. See 725 ILCS 205/1.01 (West 1996); *People v. Thorpe*, 52 Ill. App. 3d 576, 582, 367 N.E.2d 960 (1977).

*Gilford*, 336 Ill. App. 3d 722, 730, 784 N.E.2d 841 (2002). In the opinion, we deemed it necessary to remand the matter because the United States Supreme Court decision in *Kansas v. Crane*, 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002), was announced after defendant's commitment hearing was held, and therefore, the trial court never made a determination as to whether defendant's mental condition made it seriously difficult for him to control his criminal sexual behavior as required by *Crane*. See *Gilford*, 336 Ill. App. 3d at 736. The State responded by filing a petition for leave to appeal to the Illinois Supreme Court.

Our supreme court denied the State's petition for leave to appeal, but under its supervisory authority, directed us to vacate our opinion and reconsider our judgment in light of *In re Detention of Varner*, 207 Ill. 2d 425, 800 N.E.2d 794 (2003). See *People v. Gilford*, 206 Ill. 2d 630, 799 N.E.2d 679 (2003). Pursuant to the supervisory order, we vacated our opinion and now file this opinion in its stead.

After reconsidering our judgment in light of *Varner*, we again vacate the trial court's judgment and remand the matter with directions to the court to ascertain if defendant's mental condition makes it seriously difficult for him to control his criminal sexual behavior, thereby justifying civil commitment under the Illinois SDPA.

Unlike the present case, which concerns the constitutionality of a civil commitment under the Illinois SDPA, *Varner* involved the constitutionality of a civil commitment proceeding under the Sexually Violent Persons Commitment Act (Illinois SVPA) (725 ILCS 207/1 *et seq.* (West 1998)). The facts and procedural history in *Varner* are as follows.

Herbert Varner pled guilty to criminal sexual abuse of his five-year-old niece and was sentenced to 13 years' imprisonment. *Varner*, 207 Ill. 2d at 426. When Varner's prison term was ending and he was scheduled for entry into mandatory supervised release, the State initiated civil commitment proceedings against him pursuant to the Illinois SVPA, which permits the indefinite commitment of an individual found by a trier of fact to be sexually violent beyond a reasonable doubt. See 725 ILCS 207/35(f) (West 1998).

The jury found Varner to be a sexually violent person, and the circuit court entered an order committing him to the custody of the Illinois Department of Human Services for institutional care and treatment at a secure facility. See *Varner*, 207 Ill. 2d at 428. The appellate court affirmed (*In re Detention of Varner*, 315 Ill. App. 3d 626, 734 N.E.2d 226 (2000)), as did our supreme court (*In re Detention of Varner*, 198 Ill. 2d 78, 759 N.E.2d 560 (2001)).

Varner petitioned to the United States Supreme Court, arguing

that the Illinois SVPA was unconstitutional because it allowed him to be subject to civil commitment without a specific finding that he lacked volitional control over his sexually criminal behavior. The Supreme Court vacated the judgment and remanded the matter for further consideration in light of *Crane*. See *Varner v. Illinois*, 537 U.S. 802, 154 L. Ed. 2d 3, 123 S. Ct. 69 (2002).

In *Crane*, the issue was whether the Kansas Supreme Court was correct in interpreting *Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), as holding that in order for the state to involuntarily commit an individual as a sexually violent predator without violating his substantive due process rights, the state was required to prove that he lacked total or complete control over his sexually violent behavior. *Crane*, 534 U.S. at 410-11, 151 L. Ed. 2d at 861, 122 S. Ct. at 869.

In *Hendricks*, the Supreme Court had determined that the Kansas SVPA satisfied substantive due process because it restricted civil commitment to individuals who had previously committed a sexually violent act and who had a present mental abnormality or personality disorder that made it difficult, if not impossible, for the person to control his sexually violent behavior. *Hendricks*, 521 U.S. at 358, 138 L. Ed. 2d at 513, 117 S. Ct. at 2080. The Court emphasized that Hendricks' diagnosis as a pedophile and his self-admitted lack of volitional control, coupled with predictions by mental health professionals of his future dangerousness, adequately distinguished him from other dangerous persons who were more properly dealt with through criminal proceedings. *Hendricks*, 521 U.S. at 360, 138 L. Ed. 2d at 514, 117 S. Ct. at 2081.

The Supreme Court reaffirmed and clarified its *Hendricks* decision in *Crane*. In *Crane*, unlike *Hendricks*, there was no evidence in the record suggesting that Crane was unable to control his behavior. *Crane*, 534 U.S. at 417, 151 L. Ed. 2d at 865, 122 S. Ct. at 872 (Scalia, J., dissenting, joined by Thomas, J.). Crane, relying on the decision in *Hendricks*, argued, and the Kansas Supreme Court agreed, that in order to satisfy substantive due process the state was required to establish that an offender lacked total or complete control over his sexually violent behavior before he could be civilly committed.

The *Crane* Court disagreed, stating that "[i]nsistence upon absolute lack of control would risk barring the civil commitment of highly dangerous persons suffering severe mental abnormalities." *Crane*, 534 U.S. at 412, 151 L. Ed. 2d at 862, 122 S. Ct. at 870. The Court determined that although the state was not required to prove that an offender lacked total or complete control over his sexually violent behavior, the state must at least provide factual proof that the

offender had some serious difficulty controlling his criminal sexual behavior. *Crane*, 534 U.S. at 413, 151 L. Ed. 2d at 862-63, 122 S. Ct. at 870.

The *Crane* Court concluded that a lack-of-control determination was necessary in order to maintain the distinction between the "dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Crane*, 534 U.S. at 413, 151 L. Ed. 2d at 863, 122 S. Ct. at 870. The Court, however, pointing to the ever-advancing science of psychiatry, declined to establish a precise standard for determining the extent to which a sex offender must lack control before he may be found to have serious difficulty in controlling his behavior and, instead, gave each state leeway to make that determination through an interpretation of its own statute. *Crane*, 534 U.S. at 413, 151 L. Ed. 2d at 863, 122 S. Ct. at 871.

When the Illinois Supreme Court reconsidered Varner's case in light of *Crane*, the court concluded that *Crane* did not require a separate finding that Varner lacked volitional control over his sexually violent behavior. *Varner*, 207 Ill. 2d at 432. The supreme court determined that there was no need for such a separate finding, reasoning that the Illinois SVPA contained statutory definitions regarding "sexually violent person" and "mental disorder" that supplied the constitutionally required elements for civil commitment, and therefore, a jury properly instructed with these definitions did not require additional instructions concerning an offender's volitional control over his sexually violent behavior. *Varner*, 207 Ill. 2d at 432-33.

In *People v. Masterson*, 207 Ill. 2d 305 (2003), our supreme court noted that unlike the Illinois SVPA applied in *Varner*, the current version of the Illinois SDPA did not contain a statutory definition of the term "mental disorder" that specifically linked that disorder to an impairment of volitional capacity, nor did the statute provide a standard for "gauging the probability or likelihood that the subject of the proceeding will commit sexual offenses in the future." *Masterson*, 207 Ill. 2d at 329. In an effort to bring the Illinois SDPA into compliance with *Crane*, the supreme court read the definition of "mental disorder" contained in the Illinois SVPA into the Illinois SDPA.

Thus, the *Masterson* court construed the term "mental disorder," as used in the Illinois SDPA, to mean a "congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in the commission of sex offenses and results in serious difficulty controlling sexual behavior." *Masterson*, 207 Ill. 2d at 329. The *Masterson* court also "clarified" that in order for a person to be committed under the Illinois SDPA, the State must prove beyond a

reasonable doubt that the person is a sexually dangerous person pursuant to section 1.01 of the SDPA and there must be an additional "explicit finding that it is 'substantially probable' the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." *Masterson*, 207 Ill. 2d at 330.

In the present case, the trial court did not have the benefit of either *Crane* or *Masterson* when it conducted defendant's commitment hearing. Thus, the trial court never made a lack-of-control determination as required by these decisions.

The State contends, however, that defendant's diagnosis of paraphilia amply meets the "serious difficulty" requirement under *Crane*. Moreover, at oral argument, the State maintained that defendant's diagnosis as a pedophile necessarily implied that he lacked volitional capacity such that he has serious difficulty in controlling his behavior. We cannot agree with the State's position.

In the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), the authority relied upon by the State-appointed clinicians in this case, the manual cautions:

"[T]he fact that an individual's presentation meets the criteria for a DSM-IV diagnosis does not carry any necessary implication regarding the individual's degree of control over the behaviors that may be associated with the disorder. Even when diminished control over one's behavior is a feature of the disorder, having the diagnosis in itself does not demonstrate that a particular individual is (or was) unable to control his or her behavior at a particular time." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders DSM-IV-TR*, at xxxiii (4th rev. ed. 2000).

This introductory commentary in the DSM-IV indicates that defendant's diagnosis as a pedophile does not necessarily imply that he lacks volitional capacity such that he has serious difficulty in controlling his behavior. Consequently, the judgment of the trial court must be vacated and remanded with directions to determine whether defendant's mental condition causes him to have serious difficulty in controlling his criminal sexual behavior.

The "serious difficulty" finding required by the State's petition should be made by the trier of fact, which is in a superior position to hear the expert testimony, weigh the evidence, and decide if defendant's diagnosed mental condition makes it seriously difficult for him to control his behavior, thereby justifying civil commitment under the Illinois SDPA. See, *e.g.*, *In re Detention of Hughes*, 346 Ill. App. 3d 637, 654-55, 805 N.E.2d 725 (2004) (reversing and remanding for a determination of whether defendant's mental condition caused the required degree of inability to control his sexually dangerous behavior).

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County is vacated and the cause is remanded to the court for a new commitment hearing wherein the parties will have a full and fair opportunity to adduce evidence pertinent to the applicable standards announced. See, *e.g.*, *Masterson*, 207 Ill. 2d at 330; *In re Detention of Hughes*, 346 Ill. App. 3d at 654-55. We retain jurisdiction for the purpose of reviewing the trial court's determination following the commitment hearing, and the defendant and the State will be allowed to submit supplemental briefs addressing this issue in this court.

Vacated and remanded with directions.

WOLFSON and SOUTH, JJ., concur.