# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2310

HERBERT J. VARNER,

*Petitioner-Appellant,*

*v.*

TOM MONOHAN, Director,
Illinois Department
of Human Services,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 C 2065—**Matthew F. Kennelly**, *Judge.*

ARGUED APRIL 10, 2006—DECIDED AUGUST 18, 2006

Before EASTERBROOK, RIPPLE, and ROVNER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Illinois is among the states that permit indefinite civil commitment of certain sexual offenders. In 1998 Illinois initiated proceedings under the Sexually Violent Persons Commitment Act ("SVPA"), 725 ILCS 207/1 to 207/99, to commit Herbert Varner, a repeat sex offender who refused to participate in treatment programs during his 13-year sentence for the sexual assault of his five-year-old niece.

The SVPA calls for the civil confinement of any person, previously convicted of a sex offense, who is found beyond

a reasonable doubt to be a "sexually violent person". 725 ILCS 207/35(d)(1), 207/40(a). A jury heard evidence that Varner had sexually abused several children, including his daughter and two nieces. Expert witnesses testified that he suffers from a mental disorder. Varner's own submission that he assaulted one niece while believing that she is his wife supports that diagnosis. The jury was instructed that a "person who has been convicted of a sexually violent offense and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence" comes within the SVPA. *State v. Varner*, 198 Ill. 2d 78, 82, 759 N.E.2d 560, 562 (2001). See 725 ILCS 207/5(f). The jury found in the state's favor on each of these questions, and the court ordered Varner to be detained for institutional care until safe to release—an issue that may be reviewed annually on his request.

Varner argued to the state judiciary that the SVPA violates the due process clause of the fourteenth amendment because it allows a person to be detained without a specific finding that he lacks control over his sexually violent conduct. He relied principally on a decision by the Supreme Court of Kansas. The Supreme Court of Illinois rejected this argument as a matter of both state and federal law, expressly disagreeing with the Kansas decision—as the Supreme Court of the United States later did. *Kansas v. Crane*, 534 U.S. 407 (2002). But *Crane* adopted an intermediate position, so the Supreme Court of the United States directed the Supreme Court of Illinois to reconsider Varner's contentions. See *Varner v. Illinois*, 537 U.S. 802 (2002).

The Supreme Court of Kansas had held that civil commitment is permissible only if the evidence establishes that a person is utterly unable to control sexually violent conduct. The Court rejected this "absolutist approach" in favor of requiring only "proof of serious difficulty in controlling

behavior." *Crane*, 534 U.S. at 411-13. That left the question whether the findings by Varner's jury satisfy this standard. The Supreme Court of Illinois held that they do. It concluded that *Crane* does not require a specific determination that a person lacks the ability to control his behavior. *State v. Varner*, 207 Ill. 2d 425, 432, 800 N.E.2d 794, 798 (2003). Such a determination may be inferred from other findings, the court thought. Varner next sought federal collateral review, contending that the Supreme Court of Illinois's understanding of *Crane* violated the fourteenth amendment. The District Court denied his petition for a writ of habeas corpus. 361 F. Supp. 2d 762 (N.D. Ill. 2005).

Varner insists that the state judiciary's conclusions are "contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States", 28 U.S.C. §2254(d)(1), because the Supreme Court of Illinois held that the jury need not return a special verdict on the question framed by *Crane*: whether a potential committee has "serious difficulty in controlling behavior." The argument that *Crane* requires a specific jury finding that a potential committee cannot control his conduct—that inferences from other findings cannot serve—has been rejected by this court in *Laxton v. Bartow*, 421 F.3d 565 (7th Cir. 2005), as well as by the ninth circuit in *Brock v. Seling*, 390 F.3d 1088 (9th Cir. 2004).

*Laxton* arose from Wisconsin's equivalent to the SVPA. The Supreme Court of Wisconsin ruled that serious difficulty in controlling behavior is implied by the findings that its statute requires. We held that this conclusion is not objectively unreasonable or contrary to *Crane*. Laxton's jury was instructed that the state must prove that he was "dangerous to others because he has a mental disorder which creates a substantial probability that he will engage in acts of sexual violence." *Laxton*, 421 F.3d at 568. Varner's jury made functionally identical findings, from which it

follows that Illinois's resolution of this issue is no more contrary to *Crane* than Wisconsin's was. In Illinois, as in Wisconsin, a conclusion of serious difficulty in controlling behavior is implicit in the jury's finding that it was "substantially probable" that Varner would engage in future acts of sexual violence.

The jury found that: (1) Varner has a mental disorder, as a result of which (2) it is likely that he will commit new sexually violent offenses if released. The proposition that the mental disorder causes sexual offenses implies inability to exercise self-control—for, if Varner can control his behavior, then either proposition (1) or (2) must be false. *Crane* held that the Constitution requires findings that separate inability to control from unwillingness to control—that is, to separate the sick person from the vicious and amoral one. The former is a proper subject of civil commitment; the wicked person, by contrast, must be left to the criminal law (with recidivist enhancements). 534 U.S. at 413. The Court thought this rule necessary to prevent fear of recidivism from leading to indefinite preventive detention. Both Illinois and Wisconsin have adopted statutes that differentiate the sick from the depraved. Neither state used the precise language that the Court did in *Crane*, but the Constitution is about substance rather than verbiage. Once a jury has found mental illness and a likelihood of future offenses, it has drawn the line the Court thought essential.

*Crane* recognized that the line is a fuzzy one. It is correspondingly hard to see how a state that tries to draw the same sort of distinction as the Court did, though in a slightly different way, could be said to transgress "clearly established Federal law"; even if the state court is wrong, it is not clearly or unreasonably so, and correction therefore must come on direct review by the Supreme Court of the United States rather than on collateral review by the inferior courts under §2254. The Supreme Court has told us

that civil commitment of persons with both mental defects and dangerous proclivities comport with the Constitution. See e.g., *Kansas v. Hendricks*, 521 U.S. 346 (1997); *Allen v. Illinois*, 478 U.S. 364 (1986); *Minnesota ex rel. Pearson v. Probate Court of Ramsey County*, 309 U.S. 270 (1940). *Crane* does not disturb these holdings, though it does add a degree of uncertainty.

While stating that the Constitution prohibits commitment "without *any* lack-of-control determination", the Court rejected the proposition that the Constitution requires a showing of "*total* or *complete* lack of control." *Crane*, 534 U.S. at 411-12 (emphasis in original). Where between these two extremes a person's difficulty in controlling his behavior must fall remains open to decision one case at a time, and this implies the absence of a "clearly established" rule that the state judiciary could transgress. See *Brock*, 390 F.3d at 1091 ("*Crane* speaks to outer limits rather than specific elements."). Given the open-ended nature of due process, which *Crane* emphasized, states retain latitude in fashioning the details of their systems of civil commitment. See *Crane*, 534 U.S. at 413-14. Cf. *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003); *Laxton*, 421 F.3d at 572.

Offering a fall-back argument, Varner maintains that Illinois has violated the equal protection clause by distinguishing between the civil-commitment regimes for people who have, and have not, been convicted of sex offenses. In addition to the SVPA, which applies to people such as Varner who have criminal records, Illinois has enacted the Sexually Dangerous Persons Act ("SDPA"), 725 ILCS 205/0.01 to 205/12, which authorizes the indefinite civil confinement of persons who have yet to be convicted of sex offenses but are deemed likely to endanger others. See 725 ILCS 205/1.01 ("sexually dangerous person" defined, in part, as requiring only "criminal propensities to the commission of sex offenses"). The Supreme Court of Illinois has held that civil commitment under the SDPA is proper only

if the state establishes beyond a reasonable doubt that the mental condition causes "serious difficulty controlling sexual behavior." *People v. Masterson*, 207 Ill. 2d 305, 329, 798 N.E.2d 735, 749 (2003).

Illinois argues that Varner has procedurally defaulted the equal-protection theory because it was first raised in a petition for rehearing. He responds that this was the first opportunity to raise it, because it did not arise until *Masterson* distinguished the SDPA from the SVPA—and as *Masterson* was released the same day as the decision on remand in his case, it was impossible to present the argument any earlier. "Impossible" it is not: Varner could have argued (in the alternative) in his opening briefs that he is entitled to whatever standard emerges from *Masterson*. But it is unnecessary for us to decide whether Illinois requires such precautionary argumentation, for the equal protection claim fails on its merits.

The equal protection clause requires similar treatment of similarly-situated persons; it "does not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (quoting *Tigner* v. *Texas*, 310 U.S. 141, 147 (1940)). Rational-basis review applies here—the difference between a person who has been convicted of sex offenses (the SVPA) and one who has not (the SDPA) affects neither fundamental rights nor suspect classes. See *Marshall v. United States*, 414 U.S. 417 (1974). A rational relation to a legitimate government interest thus is all that the Constitution requires of state law. *Heller v. Doe*, 509 U.S. 312, 320 (1993). And our conclusion that Illinois's system comports with the due process clause establishes that it is supported by a rational basis. See *Chapman v. United States*, 500 U.S. 453, 465 (1991) ("so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment . . . an argument based on

equal protection essentially duplicates an argument based on due process").

To the extent that those who are committed as (what Illinois calls) "dangerous" rather than "violent" persons are beneficiaries of a higher burden of persuasion, the rationality of the distinction is evident. Persons committed under the SDPA have not been convicted of any sex offense; *of course* the state requires additional assurance of their danger before they can be confined. The difference between those with a criminal record of sexual offenses and those without is vital. Cf. *Richardson v. Ramirez*, 418 U.S. 24 (1974) (state laws that disfranchise convicted felons do not violate the equal protection clause). Commitment under the SDPA is a form of preventive detention of persons who have not been found guilty of a crime of sexual violence; it is sensible (if it is not compulsory) to give these persons additional protection in the form of a higher burden that the state must surmount.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*