NOTICE

Decision filed 09/01/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190162-U

NO. 5-19-0162

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Wayne County. |
| | ) | |
| v. | ) | No. 98-CF-135 |
| | ) | |
| CHRISTOPHER L. CRAIG, | ) | Honorable |
| | ) | Michael J. Molt, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Justices Cates and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's finding that the defendant remained a sexually dangerous person under the Sexually Dangerous Persons Act (725 ILCS 205/0.01 *et seq*. (West 2018)) did not violate the defendant's substantive due process rights and was not against the manifest weight of the evidence. The trial court did not abuse its discretion in admitting an evaluation report at the hearing to determine whether the defendant remained sexually dangerous.

¶ 2    In 1999, defendant, Christopher L. Craig, was adjudicated a sexually dangerous person under the Sexually Dangerous Persons Act (SDP Act) (725 ILCS 205/0.01 *et seq.* (West 2018)). Defendant filed an application for discharge or conditional release pursuant to section 9 of the SDP Act, alleging that he had recovered. *Id.* § 9. Following a bench trial, the trial court found that defendant remained sexually dangerous and denied his application. Defendant appeals, arguing that: (1) the trial court's finding that defendant suffers from a mental disorder, which

1

affects his emotional and volitional capacity that predisposes him to engage in acts of sexual violence which has existed for a period of not less than one year prior to the filing of the petition, is against the manifest weight of the evidence, and (2) the denial of his application was against the manifest weight of the evidence because the State failed to prove by clear and convincing evidence that defendant had serious difficulty controlling his sexual behavior resulting in a denial of due process. Additionally, although not set out as a separate issue, defendant argues that the trial court improperly considered an evaluation report as substantive evidence when, defendant claims, the report was introduced for a limited purpose. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                                    I. FACTS

¶ 4     On August 18, 1998, defendant was charged in a second amended information, in the circuit court of Wayne County, with one count of criminal sexual assault against D.M.R. Jr., a minor, and one count of predatory criminal sexual assault against J.J.H., a minor under the age of 13 years. 720 ILCS 5/12-13(a)(4), 12-14.1(a)(1) (West 1998). The charges were later dismissed when, on October 19, 1998, the State filed a petition to declare defendant a sexually dangerous person pursuant to the SDP Act (725 ILCS 205/3 (West 1998)). On January 25, 1999, defendant confessed the State's petition and the allegations contained therein, waived his right to a jury trial, and consented to a court-ordered commitment to the custody of the Illinois Department of Corrections (IDOC) under the guardianship of the Director of Corrections (Director).

¶ 5     On March 23, 2017, defendant filed a *pro se* application for discharge or conditional release pursuant to section 9 of the SDP Act (725 ILCS 205/9(a), (e) (West 2016)), alleging that he had recovered. Defendant, who was committed to the Big Muddy Correctional Center, alleged that as a result of the counseling and treatment he had received since 1999, he was no longer a

2

sexually dangerous person. Defendant requested that the court grant him a discharge from commitment, or alternatively, conditional release from commitment.

¶ 6    Thereafter, the trial court appointed defendant a public defender and ordered the Director of IDOC to prepare and file a statutorily mandated socio-psychiatric evaluation report on defendant. See *id.* § 9(a). The Director subsequently filed a report prepared by Dr. Kristopher Clounch, Ph.D., who is a licensed clinical psychologist and sex offender evaluator.

¶ 7    The trial court conducted a recovery hearing on defendant's application on March 26, 2019. The State's only witness was Dr. Clounch. Dr. Clounch obtained his doctoral degree in clinical psychology and was an employee of Wexford Health Service since June of 2012. Dr. Clounch's primary duties included completing sex offender evaluations. He had completed 126 sexually dangerous persons evaluations, 40 of which were recovery evaluations. The trial court qualified Dr. Clounch as an expert in the field of psychology, specifically related to sex offender evaluations, and as an expert in the field of psychology related to risk assessment of sexually dangerous persons.

¶ 8    Dr. Clounch testified at the hearing that, in evaluating defendant, he relied upon data from multiple sources, including a three-hour interview with defendant on May 15, 2018. Dr. Clounch's report was admitted into evidence over defendant's objection. The trial court admitted the report pursuant to section 9(a) of the SDP Act, although there was some discussion on the record regarding its admission also pursuant to Rule 703 of the Illinois Rules of Evidence (Ill. R. Evid. 703 (eff. Jan. 1, 2011)). The trial court ruled that it would consider "the reports, documents, other things that are referenced in this report, which is Plaintiff's Exhibit 2, as [counsel's name] has requested, as materials that Dr. Clounch used and relied upon in formulating his opinion, but not for any other purpose."

¶ 9    Dr. Clounch testified that he was familiar with the criteria for finding a person to be a sexually dangerous person under the SDP Act and, in his expert opinion, defendant was still a sexually dangerous person. Dr. Clounch's diagnosis of defendant's mental condition was pedophilic disorder, sexually attracted to males and females, nonexclusive. In reaching his diagnosis, Dr. Clounch considered defendant's arrest on September 2, 1993, on charges of criminal sexual abuse, victim between the ages of 13 to 16 years, where defendant had sex with a 14-year-old unrelated female when he was 20 years old. Defendant was found guilty of the amended offense of criminal sexual abuse. Dr. Clounch further considered defendant's August 7, 1998, arrest for criminal sexual assault of a 15-year-old male and predatory criminal sexual assault of a 12-year-old male.

¶ 10    Dr. Clounch discussed the offenses with defendant during their interview and defendant admitted to performing oral sex on the victims on a specific day. According to Dr. Clounch, a police report that he reviewed stated that defendant perpetrated sexual acts against the 12-year-old male from September 1997 through April 1998. Dr. Clounch testified that, for purposes of his diagnosis, he assumed defendant's involvement with the 12-year-old child for a significant period of time. Dr. Clounch testified that he also relied on an Illinois Department of Children and Family Services (DCFS) report of defendant's sexual intercourse with T.R., a 10-year-old female, on one occasion. No charges were ever filed after that investigation. However, a DCFS investigation indicated credible evidence to substantiate the report.

¶ 11    Dr. Clounch stated that, in forming a diagnosis, he relied upon the Diagnostic and Statistical Manual, Fifth Edition (DSM-5), a generally accepted tool to diagnose mental disorders, and his knowledge, training, and experience. He reviewed defendant's records to identify victims that would meet the criteria for the diagnosis of pedophilic disorder, and for a

4

six-month period of sexual arousal and fantasies, urges, or behaviors with young children. The 12-year-old male and 10-year-old female victims qualified as defendant having sexual behaviors with young children. Additionally, Dr. Clounch testified that defendant admitted during his interview that he had been fantasizing sexually about his cousins, D.M.R. Jr. and J.J.H., who were the victims of the charges filed on August 18, 1998. Defendant admitted that he had these sexual fantasies for a period of approximately seven months prior to offending upon them, and he admitted to offending through April 1998. The DCFS report regarding T.R. involved an offense by defendant committed around the last week of July 1998. Defendant additionally admitted to fantasizing about young women in two different postcommitment interviews, one occurring in 2002 and one occurring in 2013.

¶ 12    Dr. Clounch testified that defendant reported that he had offended upon his cousins because D.M.R. Jr. had professed his love for him and for retribution against the victims' mothers. Dr. Clounch explained that this showed less acceptance of responsibility for defendant's deviance and offending behavior because defendant believed that his offenses were justified. Defendant admitted that the offenses occurred, but he did not understand his internal mechanisms that led to commit those offenses.

¶ 13    Dr. Clounch also noted that defendant had 18 institutional rule violations during his commitment. The most recent violation was in 2015. Defendant had 57 program tickets, which were issued for, among other things, showing up late to group therapy sessions, leaving early, and not completing assignments. According to Dr. Clounch, the violations showed defendant's lack of a full level of motivation and willingness to comply with all the rules. The doctor explained that compliance with the rules in a structured environment reflected on how likely defendant would comply if released. Prior to the evaluation, defendant had difficulty attending

groups for a few years. He was placed on probation from May 8, 2018, through June 8, 2018, for missing the deviant cycle group. He signed out of the program on May 9, 2018, while in treatment phase 2 of 4.

¶ 14    Dr. Clounch opined that defendant had failed to make significant progress, because defendant had difficulty understanding cognitive behavioral therapy involving internal thoughts, feelings, perceptions of events and the world, and their effect on his behavior and offenses. Dr. Clounch told the trial court that group therapy for sex offenders was the most effective way for individuals to reduce their risk, and that the only way for defendant to reduce his substantial risk to reoffend would be to make progress in a treatment program, which defendant had not done.

¶ 15    Dr. Clounch also testified that he had spoken with the defendant's primary therapists, Ms. Stover and Ms. Young. According to Dr. Clounch, meeting with the primary therapists was a common practice by experts in the field because the primary therapists had the best understanding of a defendant's progress and behavior. Dr. Clounch met with Ms. Stover and Ms. Young on the day of his interview with defendant. Ms. Young indicated that defendant had not made any substantial changes to his belief system. He failed to recognize the internal mechanisms and how they relate to his emotions and behavior. In anger management therapy, defendant failed to understand that it was his perceptions and beliefs about events that result in anger, not the event or situation itself. Ms. Stover also told Dr. Clounch that defendant did not understand his cycle for offending in her deviant cycle group.

¶ 16    In relapse prevention cycle, the person works through the offending process to understand what led to offending. Defendant completed the 2015/2016 deviant relapse prevention cycle, but when presenting it, he had difficulty with maladaptive coping responses and lapses. In March 2017, defendant admitted in a relapse prevention therapy group that he had

6

not addressed the issues from his cycle. A lack of understanding could be related to a lack of motivation as stated in the treatment records. According to Ms. Stover, there did not appear to be a significant cognitive issue, so it appeared that he had not put forth the necessary effort to make progress.

¶ 17     Dr. Clounch's review of defendant's treatment records revealed that defendant was involved in another deviant cycle group in 2018. Defendant did not identify any behavioral cues related to sexual deviance. Dr. Clounch explained that these cues were the start of an offending process. Dr. Clounch testified that defendant's inability to understand cues and lapses affected defendant's ability to control his arousal. Defendant was not addressing his deviant arousal in treatment. Defendant admitted having fantasies and attraction to young children, but he had made no substantial progress toward addressing it. Dr. Clounch explained that if defendant cannot understand cues and lapses, he will not have the information to stop himself from reoffending.

¶ 18     Dr. Clounch further testified that the lack of treatment progress was related to defendant's propensities to commit sex offenses. Understanding internal mechanisms helps control deviant arousal and relates to anger management by using interventions that are not external, such as challenging one's own thoughts. According to Dr. Clounch, defendant's focus was still on external factors.

¶ 19     At the conclusion of the testimony and arguments, the trial court ruled as follows:

"Dr. Clounch was an expert in the field about which he testified. We had a subsequent ruling that he had expertise in the area of risk of sex offenders to re-offend. He testified that he was familiar with the statutory requirements in the State of Illinois to determine whether or not an individual was a sexually dangerous person. He testified consistent

7

with his report, which was admitted into evidence as Exhibit 2, and that report indicates that: [']Therefore, it is the opinion of this evaluator to a reasonable degree of psychological certainty that [defendant] remains a sexually dangerous person as defined, 725 ILCS 205.[']

He goes on to say at this time [defendant] is substantially probable to commit further acts of sexual violence if not confined in a structured and secured environment.

The Court believes that Dr. Clounch exhibited his understanding of the statute, that he exhibited his understanding of the fact that before being determined a sexually dangerous person one has to have a mental condition or mental illness which existed over a year that caused his sexually dangerous behavior.

I do believe that the State has met its burden of proof by clear and convincing evidence that the defendant remains a sexually dangerous person. Therefore, the Court will deny the petition for release, and the defendant will be remanded to the custody of the Illinois Department of Corrections for further treatment at the Big Muddy River Correctional Center."

¶ 20    On March 27, 2019, defendant filed a motion requesting a rehearing, which was denied. A notice of appeal was filed on April 23, 2019.

¶ 21                                    II. ANALYSIS

¶ 22    Under section 9(a) of the SDP Act, a defendant who has been found to be a sexually dangerous person may submit an application to the trial court setting forth facts showing that he has recovered. 725 ILCS 205/9(a) (West 2018). Section 9(a) of the SDP Act states:

"An application in writing setting forth facts showing that such sexually dangerous person or criminal sexual psychopathic person has recovered may be filed before the

8

committing court. Upon receipt thereof, the clerk of the court shall cause a copy of the application to be sent to the Director of the Department of Corrections. The Director shall then cause to be prepared and sent to the court a socio-psychiatric report concerning the applicant. The report shall be prepared by an evaluator licensed under the Sex Offender Evaluation and Treatment Provider Act. The court shall set a date for the hearing upon the application and shall consider the report so prepared under the direction of the Director of the Department of Corrections and any other relevant information submitted by or on behalf of the applicant." *Id.*

¶ 23 Once the defendant files an application, the court must hold a hearing, and the State has the burden of proving by clear and convincing evidence that defendant remains a sexually dangerous person. *Id.* § 9(b); *People v. Hancock*, 2014 IL App (4th) 131069, ¶ 139. Defendant is a sexually dangerous person if he has (1) a mental disorder existing for at least one year before the petition was filed, (2) criminal propensities to the commission of sex offenses, and (3) demonstrated propensities toward acts of sexual assault or sexual molestation of children. 725 ILCS 205/1.01 (West 2018); *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 103. " '[C]riminal propensities to the commission of sex offenses' means that it is substantially probable that the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." 725 ILCS 205/4.05 (West 2018).

¶ 24 Before turning to defendant's main contentions of error, we must first address an evidentiary issue. Defendant argues that some of the evidence in Dr. Clounch's report, cited by the State to support the trial court's findings, could not be considered as substantive evidence because the report was offered solely in accordance with Rule 703. Ill. R. Evid. 703 (eff. Jan. 1, 2011) (allowing experts to rely on inadmissible facts or data in forming an opinion if they are of

a type reasonably relied upon by experts in the particular field in forming opinions). During the hearing, defendant objected to the admission of the report, arguing that it contained a number of materials within that were pulled from extraneous sources. The State agreed that the extraneous materials, police reports, IDOC reports, DCFS reports, and other records reviewed by Dr. Clounch in forming his opinion, were materials that would be admissible pursuant to Rule 703. Ill. R. Evid. 703 (eff. Jan. 1, 2011). The trial court, in admitting the report, clearly indicated it was going to consider the reports and documents "as materials that Dr. Clounch used and relied upon in formulating his opinion."

¶ 25    In considering the admissibility of Dr. Clounch's report, it is important to consider the purpose of the evidence contained within the expert's report. A civil recovery hearing under the SDP Act is very different from the central issue in a criminal prosecution. In the latter, the basic issue is a straightforward factual question—did the accused commit the act alleged? *Allen v. Illinois*, 478 U.S. 364, 371 (1986). While there may be factual issues to resolve in a commitment proceeding, the factual aspects represent only the beginning of the inquiry. *Id*. Whether the individual is mentally ill and dangerous to himself or others and needs confined therapy turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists. *Id*. For example, while the State must prove at least one act of sexual assault in an initial SDP hearing, that antecedent conduct is received not to punish past misdeeds, but primarily to show the accused's mental condition and to predict future behavior. *People v. Allen*, 107 Ill. 2d 91, 105 (1985). The information contained in Dr. Clounch's report was presented for the purpose of explaining the bases for his opinions. Therefore, we find no error in the trial court's ruling admitting Exhibit 2, Dr. Clounch's report.

10

¶ 26    Further, despite the issue raised by defendant regarding Rule 703, the SDP Act provides that "[t]he Director shall then cause to be prepared and sent to the court a socio-psychiatric report concerning the applicant. *** The court shall set a date for the hearing upon the application and shall consider the report so prepared under the direction of the Director of the Department of Corrections and any other relevant information submitted by or on behalf of the applicant." 725 ILCS 205/9(a) (West 2018).

¶ 27    The provisions of the SDP Act dealing with the evidence to be included are an expansion of the admissible evidence. In *People v. Sweeney*, 114 Ill. App. 2d 81 (1969), the court held that the statute specifically required the socio-psychiatric report be prepared and considered as part of a hearing on a petition for writ of recovery. *Id.* This requirement is a statutory exception to the hearsay rule which reasons that the report has inherent guarantees of trustworthiness in both the number and professional character of the persons involved in making the report. *Id.* The findings and opinions of these professionals are important to the determination to be made in cases such as this, where expert assistance in the determination, particularly from those who have been in close contact with the defendant, is invaluable. *Id.* If these same professionals were required to appear throughout the state and testify in all cases wherein a petition for writ of recovery hearing was held, the information obtained from the reports would be unavailable. *Id.* We find no error in admitting Dr. Clounch's report into evidence, as required by statute, or the trial court's consideration of the report in making its ruling at the conclusion of the recovery hearing.

¶ 28        A. Finding That Defendant Remains a Sexually Dangerous Person

¶ 29    Defendant argues that the evidence presented at the recovery hearing did not support the trial court's finding that he remained a sexually dangerous person. The trial court's finding that defendant is still sexually dangerous may not be disturbed on review unless that decision is

11

against the manifest weight of the evidence. *In re Commitment of Sandry*, 367 Ill. App. 3d 949, 978 (2006). A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *Id*. On appeal from a recovery hearing, we must consider all of the evidence introduced at trial in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements to be proven by clear and convincing evidence. 725 ILCS 205/9(a) (West 2018); *People v. Bailey*, 405 Ill. App. 3d 154, 171 (2010). We also note that the trier of fact is in the best position to weigh the evidence and assess the credibility of the testimony and evidence presented. *In re Commitment of Fields*, 2012 IL App (1st) 112191, ¶ 62.

¶ 30   Section 1.01 of the SDP Act defines "sexually dangerous persons" as:

"All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children ***." 725 ILCS 205/1.01 (West 2018).

¶ 31   Additionally, a finding of sexual dangerousness under the SDP Act "must *** be accompanied by an explicit finding that it is 'substantially probable' the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." *People v. Masterson*, 207 Ill. 2d 305, 330 (2003).

¶ 32   The evidence presented in testimony and the expert's report showing that defendant remained a sexually dangerous person as defined by the SDP Act was sufficient for a reasonable fact finder to find by clear and convincing evidence that defendant remained a sexually dangerous person.

¶ 33    Dr. Clounch testified that defendant suffered from a mental disorder as defined by the SDP Act, pedophilic disorder. He testified that defendant's offenses against J.J.H., D.M.R. Jr., and T.R. satisfied the DSM-5 criteria for that disorder. He explained that the SDP Act requires that a person's mental disorder be related to the individual's offending and a propensity to commit sex offenses. Such a mental disorder is typically a paraphilic disorder under the DSM-5, and defendant's mental disorder satisfied the SDP Act's statutory definition. Dr. Clounch further testified that defendant's mental disorder was accompanied by criminal propensities to commit sex offenses, and that defendant had demonstrated such propensities given his acts of sexual assault or sexual molestation of children.

¶ 34    Defendant also argues that the State failed to prove that he suffered from a mental disorder which existed for a period of one year immediately prior to the filing of the petition on October 19, 1998. Dr. Clounch testified that defendant was arrested in August of 1998 for engaging in sexual contact with his cousins, a 15-year-old male and a 12-year-old male. While defendant indicated that the incident occurred on one specific day, the court records and police reports indicated that defendant offended upon the 12-year-old male from September 1997 through April of 1998. Dr. Clounch further explained that defendant indicated during his interview that he had been fantasizing sexually about his cousins for approximately seven months prior to offending upon them. That would cover the period from February 1997 through April 1998. Additionally, Dr. Clounch reviewed a DCFS report indicating that defendant offended against a victim, T.R., who was 10 years old at the time of the report in July 1998. Dr. Clounch testified to the mental disorder being present for a period of approximately a year and a half prior to the filing of the petition.

¶ 35    Dr. Clounch also addressed defendant's current mental state and testified that, in his opinion, defendant had not yet recovered from his mental illness. Defendant presented no testimony or evidence at the hearing. Therefore, there was clear and convincing evidence that the condition was present in the year prior to the filing of the October 19, 1998, petition. Defendant had not recovered on the date of the March 26, 2019, recovery hearing, and the court found that he remained a sexually dangerous person in accordance with the requirements of the SDP Act.

¶ 36    While defendant argues that Dr. Clounch failed to exhibit sufficient knowledge of the definition of mental illness contained in the SDP Act, the trial court noted in its oral pronouncement that Dr. Clounch exhibited his understanding of the statute. The court further noted Dr. Clounch's understanding of the fact that before being determined a sexually dangerous person one has to have a mental condition or mental illness which existed for over a year that caused the sexually dangerous behavior. The trial court recited the testimony, consistent with the report, showing that the evaluator's opinion, to a reasonable degree of psychological certainty, was that defendant remained a sexually dangerous person, as defined by the SDP Act, and that he was substantially probable to commit further acts of sexual violence if not confined in a structured and secured environment.

¶ 37    The State also proved that it was substantially probable that defendant would engage in sex offenses in the future if not confined. Dr. Clounch testified at length about how he arrived at his expert opinion that defendant is substantially probable to reoffend if not confined and explained that defendant had not lessened his propensity to commit sex offenses through treatment. Dr. Clounch explained that current research supports use of the adjusted actuarial approach, whereby the evaluator begins with an actuarial measure, then considers external factors, typically dynamic risk or protective factors, to predict risk of reoffense. Dr. Clounch

14

explained that he used two actuarial measures, the Static-99R and the Stable-2007, both generally accepted by experts in the field for measuring risk of future offending. Defendant received a score of three on the Static-99R. Dr. Clounch explained that individuals with that score are 1.29 times more likely to reoffend than the typical sex offender. Dr. Clounch testified that the Stable-2007 was the most widely used measure for dynamic risk factors, traits, or characteristics that have been found to be related to sexual offenses. According to Dr. Clounch, defendant's score of 16, of a possible 26 points, revealed that he had a significant level of dynamic risk. Dr. Clounch noted that when the two actuarial tests were considered together, defendant's score placed him in the 4A "above average" risk category. Dr. Clounch stated that individuals in this category are twice as likely to reoffend as the average sex offender. Additional dynamic risk factors—sexual preference for children, multiple paraphilias, substance abuse, and externalized coping—further increased defendant's risk for reoffending. According to Dr. Clounch, there were no potential protective factors that reduced defendant's risk of reoffending. Dr. Clounch wrote in his report that defendant "has displayed significant difficulty controlling his sexual impulses as evidenced by participation in frequent risky and inappropriate sexual behaviors," and defendant had "failed to make sufficient progress [in treatment] to reduce his risk to reoffend in the future."

¶ 38    After a thorough review, we find nothing in the record that would require us to substitute our judgment for that of the trial court. The trial court was in the best position to evaluate the expert testimony, make credibility determinations, and determine the weight to be given to the evidence and any inferences therefrom. Based on the foregoing, we conclude that the trial court's finding that defendant remained a sexually dangerous person was not against the manifest weight of the evidence.

15

¶ 39   B. State Failed to Prove by Clear and Convincing Evidence That Defendant Had Serious

Difficulty Controlling His Sexual Behavior

¶ 40   Defendant next argues that the State failed to meet its burden of proof by clear and convincing evidence because the State offered no testimony addressing whether defendant had serious difficulty controlling his sexual behavior. In addition, defendant argues that the trial court did not make any finding on this essential element of the State's case. While defendant framed his appeal as a challenge to the weight of the evidence, in his brief he additionally argues that, in the absence of a specific finding of lack of volitional control over his sexually dangerous behavior, defendant's continued commitment violates the principles of substantive due process. The constitutional question is subject to *de novo* review. *Masterson*, 207 Ill. 2d at 318.

¶ 41   Specifically, defendant argues that his commitment as a sexually dangerous person fails to comport with the principles of substantive due process articulated in the United States Supreme Court's decisions in *Kansas v. Crane*, 534 U.S. 407 (2002), and *Kansas v. Hendricks*, 521 U.S. 346 (1997). In *Hendricks* and *Crane*, the United States Supreme Court addressed the constitutionality of a Kansas statute that was similar to the Illinois Sexually Violent Persons Commitment Act (SVP Act) (725 ILCS 207/1 *et seq.* (West 1998)). The Kansas Sexually Violent Predator Act (Kan. Stat. Ann. § 59-29a01 *et seq.* (1994)) provided for commitment of persons who, due to a "mental abnormality" or "personality disorder," were "*likely* to engage in the predatory acts of sexual violence." (Emphasis added.) Kan. Stat. Ann. § 59-29a02(a) (1994); *Masterson*, 207 Ill. 2d at 319.

¶ 42   In 1996, the Kansas Supreme Court invalidated the Kansas statute, holding that its precommitment condition of a "mental abnormality" did not satisfy what the court believed to be

16

the substantive due process requirement that involuntary civil commitment must be predicated on a finding of "mental illness." *In re Hendricks*, 912 P.2d 129, 138 (Kan. 1996).

¶ 43    The United States Supreme Court subsequently reversed the judgment of the Kansas Supreme Court, holding that the statutory definition of "mental abnormality" satisfied substantive due process requirements. *Hendricks*, 521 U.S. at 346. The Court noted that states have, "in certain narrow circumstances," provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety, and the Court had "consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards." *Id.* at 357. The Court observed that the Kansas statute required that the mental abnormality make the person "likely to engage in the predatory acts of sexual violence." (Internal quotation marks omitted.) *Id*. The Court stated, "The statute thus requires proof of more than a mere predisposition to violence; rather, it requires evidence of past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated." *Id*. at 357-58.

¶ 44    In *Masterson*, the Illinois Supreme Court addressed, and answered, the volitional control issue raised by defendant. The *Masterson* court noted that the current version of the SDP Act did not contain a statutory definition of the term "mental disorder" that specifically linked that disorder to an impairment of volitional capacity, nor did the statute provide a standard for "gauging the probability or likelihood that the subject of the proceeding will commit sexual offenses in the future." *Masterson*, 207 Ill. 2d at 329. In an effort to bring the SDP Act into compliance with *Crane*, the court read the definition of "mental disorder" contained in the SVP Act into the SDP Act. The *Masterson* court construed the term "mental disorder," as used in the

17

SDP Act, to mean a "congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in the commission of sex offenses and results in serious difficulty controlling sexual behavior." *Id.* The *Masterson* court also clarified that in order for a person to be committed under the SDP Act, there must be an additional "explicit finding that it is 'substantially probable' the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." *Id.* at 330.

¶ 45    The *Masterson* court reasoned that:

> "The language of the [SDP Act] implies that the mental disorder which afflicts the subject of the commitment proceeding must be causally related to the person's propensity to commit sex offenses, and the requirement that the person has demonstrated that propensity by his or her actions is an important indicator of both mental abnormality or disorder and future dangerousness, as *Hendricks* acknowledged. See *Hendricks*, 521 U.S. at 362. By acting upon their propensities, those suffering from mental disorders demonstrate dangerousness and impaired volitional capacity." (Emphases omitted.) *Id.* at 328.

¶ 46    *Masterson* additionally held that "a separate lack-of-control determination couched in terms of 'serious difficulty controlling behavior' " was not required for civil commitment to satisfy substantive due process. *Id.* at 324.

¶ 47    In *In re Detention of Varner*, the Illinois Supreme Court, in analyzing the SVP Act, concluded that a separate finding of defendant's lack of volitional control over his sexually violent behavior was not required by *Crane*, 534 U.S. 407. *In re Detention of Varner*, 207 Ill. 2d 425, 432 (2003). The Illinois Supreme Court determined that there was no need for such a separate finding, reasoning that the Illinois SVP Act contained statutory definitions regarding

18

"sexually violent person" and "mental disorder" that supplied the constitutionally required elements for civil commitment. Therefore, a jury properly instructed with these definitions did not require additional instructions concerning an offender's volitional control over his sexually violent behavior. *Id.* at 432-33.

¶ 48 Defendant relies on this court's decision in *People v. Gilford*, 361 Ill. App. 3d 56 (2005), for the proposition that a diagnosis under the DSM-5 does not meet the State's burden of showing that defendant lacks volitional capacity such that he has serious difficulty in controlling his behavior. We agree. However, we also note that the *Gilford* court specifically stated that the trial court in that case did not have the benefit of either *Crane* or *Masterson* when it conducted defendant's commitment hearing. *Id.* Thus, the trial court never made a lack-of-control determination as required by those decisions. Further, the statute the court analyzed in *Gilford* is different than the statute under which defendant was committed here.

¶ 49 Since *Masterson* was decided, the SVP Act's definition of a "mental disorder" has been codified into section 4.03 of the SDP Act (725 ILCS 205/4.03 (West 2018)), and the SVP Act's "substantially probable" standard has been codified in section 4.05 of the SDP Act (*id.* § 4.05). The definition in the SDP Act of "mental disorder" was added in 2006, as follows: " 'Mental disorder' means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." *Id.* § 4.03.

¶ 50 *Masterson* held that satisfaction of the elements of the SDP Act, when applying the definitions in the SVP Act, suffices to comport with *Crane*. *Masterson*, 207 Ill. 2d at 328-29; see also *Varner v. Monohan*, 460 F.3d 861, 864 (7th Cir. 2006) (conclusion that defendant had serious difficulty in controlling behavior implicit in jury's finding that it was "substantially probable" that defendant would engage in future acts of sexual violence). A fact finder properly

19

instructed with the definitions of "mental disorder" and other pertinent statutory terms need not receive additional separate instruction on lack of control. *Masterson*, 207 Ill. 2d at 324-27; see also *In re Detention of Dean*, 337 Ill. App. 3d 610, 611-13 (2003); *People v. Swanson*, 335 Ill. App. 3d 117, 122-23 (2002); *In re Detention of Isbell*, 333 Ill. App. 3d 906, 911-13 (2002).

¶ 51    In the present case, Dr. Clounch was qualified as an expert and testified that he had completed approximately 126 sexually dangerous persons evaluations. He further testified that to be adjudicated a sexually dangerous person under the SDP Act:

> "[t]he person must have a mental condition or diagnosis that is present for not less than one year prior to the petition. That mental condition and/or diagnosis is related with criminal propensity to commit sexual offenses. The individual has displayed criminal propensity to complete—or commit sex offenses, including sexual assault or the molestation of children. And the individual is substantially probable to re-offend sexually if not confined."

¶ 52    Dr. Clounch described the information that he relied upon in forming his diagnosis for pedophilic disorder in great detail and testified as to how he arrived at defendant's diagnosis under the DSM-5. He then testified that the SDP Act requires a finding of mental disorder different from that of the DSM-5. He testified that he would be looking for a diagnosis or mental disorder that would be related to the individual's sexual offending, and that there would be a criminal propensity for the sexual offenses.

¶ 53    Defendant argues that the State offered no testimony regarding the lack of control element. We disagree. Dr. Clounch testified that, at the time of the hearing, it did not appear that defendant was addressing his deviant arousal in treatment. Defendant admitted that he had fantasies and/or attraction to young girls and young boys, but there had not been significant

20

progress toward addressing those issues. Dr. Clounch explained that defendant was unable to recognize all of his behavioral cues which would lead to sexual offending. Defendant was unable to understand where his lapses of sexual offending were and why they were lapses for him. Dr. Clounch opined that, because defendant had difficulty understanding all of the terms related to his treatment recovery and ultimately applying them to his offending history, if released in the future, defendant would not have the information or tools from treatment to ultimately stop himself from offending in the future. Dr. Clounch testified that defendant's lack of treatment progress was related to his propensities to commit sex offenses in the future. Dr. Clounch testified that defendant's mental disorder caused a criminal propensity to commit sexual offenses, and that defendant had not addressed those issues during treatment, *i.e.*, defendant had not lessened those criminal propensities to commit future offenses through treatment. While Dr. Clounch did not say the words "emotional or volitional control," testimony about the lack of treatment progress spoke to defendant's lack of volitional control when considered in light of all of the evidence presented. Dr. Clounch opined that defendant's mental disorder was accompanied by criminal propensities to commit sex offenses, that defendant had demonstrated such propensities towards acts of sexual assault or acts of sexual molestation of children, and that defendant's diagnosis of pedophilic disorder met the definition of mental disorder under the SDP Act. Dr. Clounch further testified, and noted in his report, that defendant was substantially probable to engage in the commission of sex offenses if not confined.

¶ 54    Dr. Clounch further testified that defendant was additionally diagnosed with severe alcohol use disorder, a disorder that was related to some people's offending. Dr. Clounch explained that an alcohol use disorder was linked to general recidivism, and individuals under the influence of a substance have decreased inhibitions. While Dr. Clounch noted that this

21

diagnosis was not a mental disorder as defined by the SDP Act, Dr. Clounch testified that the diagnosis was a risk factor affecting defendant's general self-regulation of behavior.

¶ 55    The relevant definitions in the SDP Act regarding "mental disorder" and the "substantially probable" standard meet both elements set forth in *Hendricks*, *i.e.*, that the person was unable to control his behavior and posed a danger to himself or others. A judge presiding over a bench trial is presumed to know the law and to follow it, and this presumption may only be rebutted when the record affirmatively shows otherwise. *People v. Thorne*, 352 Ill. App. 3d 1062, 1078 (2004).

¶ 56    In its oral pronouncement, the court referenced Dr. Clounch's report, introduced as State's exhibit 2, which indicated that the doctor used the appropriate legal standard in arriving at his expert opinion. In the report, Dr. Clounch specifically noted his opinion as follows: "[I]t is the opinion of this evaluator to a reasonable degree of psychological certainty that Mr. Craig remains a sexually dangerous person as defined, 725 ILCS 205." For these reasons, we reject defendant's argument based on substantive due process grounds.

¶ 57                                    III. CONCLUSION

¶ 58    For the forgoing reasons, the judgment of the circuit court of Wayne County is affirmed.


¶ 59    Affirmed.

22